**RIVER OAK CENTER FOR CHILDREN, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

National Labor Relations Board,
Petitioner–Respondent,

v.

River Oak Center for Children, Inc.,
Respondent–Petitioner.

Nos. 05–77388, 06–71055.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 2008.

Filed April 16, 2008.

by 9th Cir. R. 36–3.

James E. Mesnier, Sacramento, CA, for Petitioner.

Christopher W. Young, Aileen A. Armstrong, Esq., Fred B. Jacob, Washington, DC, Joseph P. Norelli, San Francisco, CA, for Respondent.

Before: NOONAN, W. FLETCHER, and BEA, Circuit Judges.

## MEMORANDUM *

The National Labor Relations Board (the "Board") found that River Oak Center for Children, Inc. ("River Oak") violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the "Act"), Pub.L. No. 74–198, 49 Stat. 449 (1935), *codified as amended at* 29 U.S.C. §§ 151–169, by refusing to provide bargaining unit member addresses and telephone numbers to Social Services Union, Local 535 (the "Union") during negotiations of a new collective bargaining agreement. The Board granted summary judgment in favor of the Union and ordered River Oak to furnish the information. River Oak petitioned for review. The Union cross-applied for enforcement of the Board's order.

The parties are familiar with the facts. We proceed to the law. This court upholds decisions of the Board if the Board's findings of fact are supported by substantial evidence and if it has correctly applied the law. *NLRB v. Int'l Bhd. of Elec. Workers, Local Union 112*, 992 F.2d 990, 992 (9th Cir.1993). We review questions of law *de novo*, but give considerable deference to the Board's expertise in construing and applying the Act. *Id.*

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

The Act provides that it is an unfair labor practice for an employer "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed [by the Act]" or "to refuse to bargain collectively with the [employees' representatives]...." *See* Sections 8(a)(1), (5), *codified at* 29 U.S.C. §§ 158(a)(1), (5). The Supreme Court has held that the duty to bargain "includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 303, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979) (citations omitted). A "liberal, discovery-type standard" applies to the determination of relevancy. *Press Democrat Pub. Co. v. NLRB,* 629 F.2d 1320, 1325 (9th Cir.1980) (citations and internal quotation marks omitted).

The Board has repeatedly held that in the context of collective bargaining, home addresses and telephone numbers of bargaining unit employees are presumptively relevant and that the employer has the burden of proving lack of relevance. *See, e.g., A–Plus Roofing, Inc.,* 295 NLRB 967, 970 (1989); *Watkins Contracting, Inc.,* 335 NLRB 222, 223–24 (2001); *Baker Concrete Constr., Inc.,* 338 NLRB No. 48, 2002 WL 31440178 at \*4 (2002); *La Gloria Oil and Gas Co.,* 338 NLRB 858, 858 (2003). We find that the Board correctly treated the Union's request as presumptively relevant.

River Oak contends that two sections of its collective bargaining agreement (the "CBA") with the Union prohibit it from providing employee contact information and thereby defeat the presumption. The first, Section 11A, provides that "[a]ll personnel records are confidential. Access to the personnel file is limited to the employee, the employee's supervisor, the President/Chief Executive Officer, the Human Resources and other Human Resources."

River Oak argues that because the Union is not specifically mentioned in this list, River Oak is prohibited from disclosing contact information to the Union. River Oak ignores the fact that this section refers to "personnel files," which include far more employee information than just contact information. This section does not clearly prohibit River Oak from providing the Union with employee contact information.

The second section, Section 11G, provides that "[River Oak] respects the privacy of its employees and strives to insure confidentiality of information about employees and former employees. Information is not to be improperly released either within the Agency or to external sources. Any calls, documents, or questions concerning ... home address and telephone numbers ... shall be referred only to the Human Resources Director or his/her designee." This section only specifies that requests for employee addresses and telephone numbers will be referred to the Human Resources Director. It does not specify what this person is supposed to do with these requests and it does not prohibit River Oak from providing the information to the Union. The release of such information to the Union also would not be "improper[ ]", given the presumption of relevancy such information has during the collective bargaining process.

The dissent also cites Section 2E in support of its position. This section provides:

Not later than the (10th) tenth of each month, [River Oak] shall supply the Union with the name, classification, mailing address and date of hire of newly hired employees, the name address and date of status change for any employee whose status changed from On–Call to Regular Employee and the names of any employees terminated or laid off during the previous month.

Contrary to the dissent's assertion, this provision does not prohibit River Oak from supplying mailing addresses and telephone numbers on other occasions. It also is silent as to how the parties should interact during collective bargaining. Even when read in light of the CBA's other provisions, Section 2E does not explicitly prohibit River Oak from complying with its obligations under the Act and agency case law to deliver employee addresses and telephone numbers to the Union during collective bargaining.

In light of the vagueness of the CBA and the clarity of the case law, substantial evidence supports the Board's finding that the CBA does not prohibit River Oak from providing the Union with employee contact information.

The petition is DENIED and the Board's order is ENFORCED.

BEA, Circuit Judge, dissenting:

The majority puzzlingly conclude that because employees' addresses and telephone numbers ("contact information") are only a *portion* of the personnel record the CBA requires to be confidential, the lesser is not included in the greater. This logic escapes me. For example, would the majority hold that if a person's hospital record is privileged from discovery, the results of a potentially embarrassing medical test nevertheless are discoverable because the hospital record includes much *more* than that test result?

The majority suggests, citing no authority, that River Oak is required to show the CBA "clearly prohibit[s]" River Oak from providing employee address and telephone numbers to the Union. The law requires no such thing. River Oak must merely show the CBA creates a confidentiality interest among employees in their addresses and telephone numbers, justifying its refusal to disclose this confidential in-

formation. *Retlaw Broadcasting Co. v. NLRB*, 172 F.3d 660, 669–70 (9th Cir.1999) ("An interest in privacy or confidentiality can support an employer's refusal to produce information to a bargaining representative."). The interpretation of the CBA—including whether it prohibits disclosure of confidential information—is a matter of law for this court. *NLRB v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997) ("We defer to the Board's reasonable interpretation and application of the NLRA. However, questions of the interpretation of collective bargaining agreements ... are reviewed de novo.") (internal citation omitted).

I conclude the CBA—agreed to by both the Union and the employer—does create a confidentiality interest among River Oak employees in their addresses and telephone numbers. The Union's request for this information under these circumstances violates this confidentiality interest. Accordingly, I respectfully dissent.

Section 11 of the CBA is entitled "Personnel Files." Subsections 11A and 11G are the provisions that control disclosure of confidential information contained in personnel files. Section 11A, the first section cited by the majority, makes personnel files—and, since it does not distinguish between portions of the files, *all* information contained therein—confidential. Section 11A also lists the sole individuals who may access the confidential files. The Union is not on that list.

Section 11G is a statement of confidentiality, committing River Oak to "respect[ ] the privacy of its employees and strive[ ] to insure confidentiality of information about employees and former employees." Under Section 11G, River Oak cannot "improperly release[ ]" information. Further, all queries for "confidential matters"—

which explicitly include employees' "home address and telephone numbers"—must be directed to the Human Resources director or his designee. The majority is correct this subsection "does not specify what this person is supposed to do with these requests"; nevertheless, the only reasonable interpretation of the CBA is that the Human Resources director or designee, upon receiving a request for confidential information, will look to the relevant provisions of the CBA to determine "what [he] is supposed to do."

The only relevant provisions which dictate what the Human Resources director or designee should do with a request for confidential information are Section 11A and Section 2E. As noted, Section 11A lists certain individuals who may have access to the confidential information contained in personnel files; the Union is not among them.[1] Section 2E, however, is a provision which the Union negotiated for itself in apparent recognition that it would need access to employee information in certain circumstances. Accordingly, Section 2E requires River Oak to give the Union the names and addresses of employees on the following occasions only: when they (1) are hired, (2) change status, or (3) are laid off or fired. Section 2E does not give the Union the right to updated or current information on a constant basis, but only at those three specified occasions. And it certainly does not give the Union the right to any other confidential employee infor-

mation, including telephone numbers, even on those three occasions. The majority argue that by calling out the three occasions on which the names and addresses of the employees can be given to the Union, the contract is ineffective to limit this disclosure to those three occasions because it does not go further and "explicitly prohibit River Oak from complying with its obligations under the Act and agency case law ..." But this ignores that the contract makes confidential this information (Sections 11A and 11G) and then provides the three exceptions to the confidentiality obligation (Section 2E). Of course, the "obligation[ ] under the Act and the agency case law" is to implement the CBA, and to overcome any presumption useful only when evidence is absent by the evident provisions of the CBA.

Thus, read as a whole, the CBA creates for River Oak employees a confidentiality interest in their addresses and telephone numbers which the Union's request violates. The information the Union now seeks does not fall within the sole exception to confidentiality which the Union negotiated for itself. While employees' addresses and telephone numbers may be "presumptively relevant," River Oak has established, under the terms of the CBA, its employees have "a legitimate claim of confidentiality" justifying River Oak's refusal to disclose their addresses and telephone numbers. *See Retlaw Broadcasting Co.*, 172 F.3d at 669–70.[2] Hence, the agen-

---

1. Section 11A states that an employee may provide a written designation to Human Resources for release of information to designated individuals. As to those employees who filed designations for release of their information to the Union, River Oak complied. This preserves the individual worker's choice to allow contact by the Union. The majority's opinion eliminates that choice, eliminating thereby an element of each worker's individuality.

2. In *Retlaw*, 172 F.3d at 664, the Union sought access to "personal service contracts"—employment agreements between individuals and Retlaw. We held the employer had failed to "show[ ] any need for confidentiality" because there was no evidence any employee had asked that his contract not be disclosed or that Retlaw "ever assured employees that this information would be kept confidential." *Id.* at 670. In stark contrast to *Retlaw*, River Oak promised, in writing, to keep employees' addresses and telephone

cy-created "presumptive relevance" has been overcome by proof of the objective intent of the workers and employer, freely expressed in that crown jewel of labor law: the Collective Bargaining Agreement. Maybe these workers do not *want* the Union calling or visiting their homes; undoubtedly they thought they were protected from such intrusion under the terms of the CBA. The majority, however, disdain the expressed, written intent of the parties, choosing instead to embrace a bureaucratically created procedural aid—the presumption—meant to be used, as are all presumptions, when proof is absent. As the proof of when and under what conditions the names, addresses and phone numbers of the employees may be made known to the Union are specifically set forth in the CBA, that proof is evident, and we err in continuing to apply a contrary presumption in the face of that proof.

Accordingly, I would hold the Board erred in concluding River Oak committed an unfair labor practice by refusing to provide the addresses and telephone numbers of bargaining unit members. I would grant the petition for review and deny enforcement of the order.

numbers confidential. *See also Salt River Valley Water Users' Ass'n v. NLRB,* 769 F.2d 639, 642 (9th Cir.1985) (rejecting the employer's contention confidentiality justified its refusal to release employee job performance and disciplinary records to the union where there was no evidence of a commitment to employees to maintain confidentiality of records).